UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ILMIYA YARULLINA**, Individually and as Personal Representative of the Estate of Gordon Casey,<br><br>           Plaintiff,<br><br>      v.<br><br>**UNITED STATES OF AMERICA**, *et al.*,<br><br>           Defendants. | Case No. 1:24-cv-01022 (TNM) |

## MEMORANDUM ORDER

Ilmiya Yarullina's son was shot and killed by U.S. Secret Service officers after causing a disturbance at an ambassador's residence. As the representative of his estate, Yarullina sued the Government and the officers who shot him. Her claims are many, but the current dispute is narrow. The Government moves to dismiss the Secret Service officers as defendants as to Counts IV through VII, asserting they are immune under the Federal Tort Claims Act ("FTCA"). Yarullina retorts that discovery is necessary to determine immunity. The Government also moves to dismiss Count VIII, which alleges negligent training and supervision. It contends the Court lacks jurisdiction over that claim because Yarullina did not administratively exhaust it and an FTCA exception bars it. Alternatively, the Government moves to dismiss the count for failure to state a claim.

Because the Government has provided the necessary certification to immunize the federal officers under the FTCA, the Court dismisses them as defendants as to Counts IV through VII. The Court also rejects Yarullina's contention that discovery is necessary to determine immunity, so it denies her motion for early discovery. As for Count VIII, Yarullina administratively exhausted her claim and the cited FTCA exception is inapplicable, so the Court has jurisdiction.

The Court still dismisses Count VIII because it cannot plausibly infer that the Secret Service was on notice of past dangerous or incompetent behavior by the three officers—a necessary element of the claim.

## I.

In recounting the background of this case, the Court accepts the facts in Yarullina's Amended Complaint as true. *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Yarullina is the personal representative of the estate of her late son, Gordon Casey. Am. Compl., ECF No. 13, ¶ 1. On the morning of April 20, 2022, 19-year-old Casey experienced a mental health crisis. Am. Compl. ¶ 13. For unknown reasons, he entered the grounds of the Peruvian Ambassador's residence in Washington, DC, and began causing a ruckus. Am. Compl. ¶¶ 10, 14. After grabbing a decorative tiki torch, he started striking it against the windows of the residence while yelling nonsensical phrases in Spanish. Am. Compl. ¶¶ 15–16. The Peruvian Ambassador's staff tried placating him to no avail, so they called the U.S. Secret Service. Am. Compl. ¶¶ 17, 21.

Three Secret Service officers arrived about five minutes later. *See* Am. Compl. ¶¶ 21, 24, 26. The dispatcher told them that Casey was breaking windows and vandalizing the property but was otherwise not combative. Am. Compl. ¶¶ 22–23. Peruvian Embassy staff directed the officers to the backyard of the residence, where they encountered Casey. Am. Compl. ¶¶ 26–27. They instructed him to drop the tiki torch, but Casey did not comply or respond. Am. Compl. ¶¶ 28, 49. One of the officers then tasered Casey, striking him in the left bicep. Am. Compl. ¶ 29. The other two officers opened fire, shooting at Casey seven times and hitting him twice. Am. Compl. ¶¶ 33–36. Immediately afterward, the officers called in emergency medical services.

Am. Compl. ¶ 40.  They arrived five minutes later but could not save Casey.  Am. Compl. ¶¶ 40–42.  He was pronounced dead at the scene.  *Id.*

In April 2023, Yarullina filed an administrative claim with the Secret Service.  Am. Compl. ¶ 8; *see also* Admin. Claim Letter, ECF No. 16-4.  She included several contentions, but the core of her claim was that the Secret Service officers used excessive force.  *See* Admin. Claim Letter.  The agency did not respond, which paved the way for Yarullina to pursue her claims in federal court.[1]  Am. Compl. ¶ 8; 28 U.S.C. § 2675(a).  She lodged a ten-count Complaint against the United States and the three unidentified Secret Service officers.  *See* ECF No. 1 at 28.  The Government moved to partially dismiss the case, and Yarullina responded by amending her Complaint.  ECF Nos. 9, 13.

The Government again moved to partially dismiss the case.  Mot. to Dismiss, ECF No. 16.  It maintains that the three unidentified officers should be dismissed from Yarullina's tort claims in Counts IV through VII because the United States is the only proper defendant under the FTCA.  *See* Mot. to Dismiss at 6–7; *see also* Reply, ECF No. 21, at 1–4.  And it says that Count VIII for negligent supervision and training should be dismissed for three reasons, two of which are jurisdictional.  It contends that:  (1) the Court lacks jurisdiction because Yarullina did not administratively exhaust the claim; (2) the Court lacks jurisdiction because of the FTCA's discretionary function exception; and (3) even if the Court has jurisdiction, Count VIII fails to state a claim.  *See* Mot. to Dismiss at 7–15.  Yarullina disagrees on all fronts.  *See* Opp'n, ECF

---

[1]  Yarullina followed up in another letter to the agency in March 2024 and included more claims.  Opp'n, ECF No. 19, at 7.  But neither party treats the follow-up letter as an amendment to her original claim, so the clock for administrative exhaustion began running when she filed her initial claim.  *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(c) (discussing amendments).

No. 19.  The Government also challenged Counts IX and X.  Mot. to Dismiss at 16.  Yarullina conceded both counts, Opp'n at 3 n.2, so the Court dismisses them.

The motion is now ripe, and the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1346(b).

## II.

Courts must ensure they have jurisdiction over disputes before resolving them.  *See Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 706 (D.C. Cir. 2008); *see also* Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Courts "accept all of the factual allegations in the complaint as true" when assessing jurisdiction but may also "consider materials outside the pleadings."  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (cleaned up).

For tort claims against the United States, the FTCA lays out the jurisdictional parameters.  *See generally Brownback v. King*, 592 U.S. 209, 210–12 (2021).  It waives sovereign immunity for the government, but also limits a plaintiff's ability to sue the government employees who caused the harm.  *Id.*  Among other conditions, the FTCA requires a plaintiff to administratively exhaust her claims with an agency before resorting to federal court.  28 U.S.C. § 2675(a).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Courts draw all reasonable inferences in the plaintiff's favor, *Am. Nat. Ins. Co.*, 642 F.3d at 1139, but need not accept "legal conclusion[s] couched as [] factual allegation[s]."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  While the FTCA may confer jurisdiction, the underlying cause of action comes from state law.  *See Art*

4

*Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). So to survive a motion to dismiss, an FTCA action must still state a plausible claim for relief under the law of the state where the tort occurred. *See id.*

### III.

### A.

The Court first considers whether the three unidentified officers are proper defendants for Counts IV through VII. The FTCA allows tort claims against the United States, but it rarely permits actions against federal employees acting in their official capacities. *See Osborn v. Haley*, 549 U.S. 225, 238 (2007). If government employees are sued in their official capacities, the Government can establish immunity for them by providing a Westfall Certification. *See id.* at 230. The certification comes from the Attorney General or her delegee and attests that the officers were "acting within the scope of [their] office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.4(b) (delegation provision).

Such is the case here. The Government has submitted a proper Westfall Certification for the officers. Westfall Certification, ECF No. 16-3. It certifies that they were "acting within the scope of their employment as employees of the United States of America at the time of the alleged incidents." *Id.* Yarullina still maintains the Government cannot move to dismiss these defendants without first identifying them and allowing her to serve them. Opp'n at 5–6. She asserts their identities are necessary to "determine if they were acting within the course and scope of their employment." Opp'n at 6. To this end, Yarullina moves for early discovery to learn the officers' identities. Pl.'s Mot. for Early Discovery, ECF No. 14; *see also* Opp'n at 6 n.3.

5

But Yarullina's own pleading forecloses this line of attack: the Amended Complaint directly alleges in Counts IV through VII that the officers were acting in the scope of their employment as agents of the United States. *See* Am. Compl. ¶¶ 122 (Count IV), 129 (Count V), 139 (Count VI), 143 (Count VII). More, she offers no compelling support for her assertion that the Government must identify the officers before moving to dismiss them. To the contrary, the Westfall Act provides covered officials full *immunity* from suit rather than being a mere affirmative defense after litigation commences. *See Osborn*, 549 U.S. at 238. Requiring service on parties who are immune from suit imposes on them an improper litigatory burden. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (explaining that immunity protects against the "expensive and time consuming preparation to defend" against a lawsuit).

The Court will thus deny Yarullina's motion for early discovery and dismiss the three officers as defendants in Counts IV through VII.

**B.**

Turn now to negligent training and supervision. The Government opposes Count VIII on three grounds, the first two of which are jurisdictional. It contends that Yarullina did not administratively exhaust the claim and, even if she did, the FTCA's discretionary function exception bars the claim. Mot. to Dismiss at 8–15. It rounds these positions out by arguing that even if the Court has jurisdiction, Count VIII fails to state a claim. *Id.* at 15. The Court is unpersuaded by the jurisdictional arguments but will dismiss Count VIII because it fails to state a claim.

**1.**

The Government says Yarullina's administrative claim with the Secret Service did not encompass her negligent training and supervision allegation. Mot. to Dismiss at 8–10. So it

reasons that Yarullina did not administratively exhaust her claim, which divests this Court of jurisdiction over it. *Id.* The Court disagrees.

The FTCA requires a plaintiff to work through an agency's administrative claims process before suing in federal court. 28 U.S.C. § 2675(a). If the agency denies the claim or takes no action after six months, the plaintiff can sue. *Id.* The claims in federal court are limited to those of which the agency was on notice from the plaintiff's administrative claim. *Id.* This notice requirement is "minimal." *Tsaknis v. United States*, 517 F. Supp. 2d 295, 298–99 (D.D.C. 2007) (quoting *GAF Corp. v. United States*, 818 F.2d 901, 920 (D.C. Cir. 1987)). To satisfy it, the claimant must "file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp.*, 818 F.2d at 919. The notice of injury "enable[s] the agency to investigate and ascertain the strength of a claim" while the sum-certain "enable[s] it to determine whether settlement . . . [is] desirable." *Id.* at 920.

But claimants need not identify the precise theories of liability behind their claims. An agency is constructively on notice of any "theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal." *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999). Accordingly, an agency is generally on notice of missteps that "were part of the chain of events that culminated in" the harm described in the administrative complaint. *Tsaknis*, 517 F. Supp. 2d at 299 (quoting *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980)).

To be sure, Yarullina did not directly identify negligent training and supervision in her administrative claim. *See* Mot. to Dismiss at 9. And the Government is also correct that Yarullina's more detailed follow-up letter a year later did not widen the aperture on notice

because neither party treats it as an amendment to the original claim. *See* Reply at 7–8. But none of this gets the Government where it wants to go.

Yarullina "sufficiently describe[ed] the injury to enable the agency to begin its own investigation," *GAF Corp.*, 818 F.2d at 919. The core of her claims both with the agency and with this Court are that officers used excessive force when they shot Casey. Her agency letter broadly alleges that this shooting came about as the result of negligence and that the conduct of the three officers was "objectively unreasonable under the circumstances." Admin. Claim Letter at PDF p. 2. An agency investigation into possible negligence surrounding Casey's shooting would necessarily have unearthed questions on whether the officers followed agency protocol. And those questions would have naturally prompted scrutiny of the officers' training and supervision vis-à-vis those protocols. Any "reasonable investigation" would thus have identified deficient training and supervision as possible sources of liability because they are part and parcel with Yarullina's negligence claim. *Burchfield*, 168 F.3d at 1255. So Yarullina can pursue her claim in federal court because the Secret Service had constructive notice of it.

### 2.

In the Government's second jurisdictional argument, it says Count VIII is barred by the FTCA's discretionary function exception. This exception preserves the Government's sovereign immunity for claims premised on discretionary actions by federal employees. 28 U.S.C. § 2680(a). Two considerations guide the applicability of the exception: (1) the action must involve "an element of judgment or choice" rather than rigidly adhering to "a federal statute, regulation, or policy [that] specifically prescribes a course of action"; and (2) the judgment exercised in the action must be "of the kind that the discretionary function exception was

designed to shield," meaning it was a decision "grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (cleaned up).

On the basic requirements, the parties agree. *See* Mot. to Dismiss at 11, Opp'n at 11. But they diverge on how the test caches out in its application because they conceptualize the issue differently. The Government frames this as a dispute over "the adequacy of the training offered by the Secret Service, not whether a specific required training occurred." Mot. to Dismiss at 13. It says Yarullina has identified no regulation or policy "that specifically prescribes how the Secret Service should supervise or train its officers in the use of force." Mot. to Dismiss at 11–12. Instead, it acknowledges that some applicable policies touch on training and supervision, but it says those policies leave the finer details to the boots-on-the-ground employees tasked with implementing the programs.

Yarullina says otherwise. She contends that the agency "*failed to train*" the three officers on "use of force." Am. Compl. ¶ 159 (emphasis added); *see also* Opp'n at 13 ("Plaintiff alleges that the United States failed to ensure that the Doe Defendants adhered to already set policies and rules." (cleaned up)). And she identifies a specific policy that she says mandates training: the Secret Service's "Use of Force Policy." Am. Compl. ¶¶ 60, 159; *see also* Dep't Policy on the Use of Force, ECF No. 19-4.

The Government is right insofar as the relevant policies imbue employees with discretion on the *content* of training programs. *See, e.g.*, On-the-Job-Training (OJT) Program, ECF No. 9-4, at 1 (requiring training coordinators to "identify training activities necessary" for employees). But though the training *curriculum* may be discretionary, the *frequency* of certain types of training is not. *See* Dep't Policy on the Use of Force at 5 (the agency "*shall* conduct less-lethal use of force training no less than every two years" (emphasis added)). Yarullina's pleading is

9

not a model of clarity, but the Court can fairly infer that she is alleging the Secret Service "failed to train" the three officers as required by the Department Policy on the Use of Force. So the discretionary function exception does not foreclose jurisdiction because Yarullina is alleging the Secret Service breached mandatory policies by not providing required training at the mandated frequency. *Gaubert*, 499 U.S. at 324 ("If [an] employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.").

### 3.

Having hashed out the Government's jurisdictional objections, the Court next considers whether Count VIII states a plausible claim. It does not.

The FTCA is not itself a cause of action, so a motion to dismiss turns on applicable local law. *See Art Metal*, 753 F.2d at 1157. Under D.C. law the elements of negligent training and supervision are: (1) "that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner," and (2) "that the employer, armed with that actual or constructive knowledge failed to adequately supervise [or train] the employee." *Blair v. Dist. of Columbia*, 190 A.3d 212, 229 (D.C. 2018)); *Lin v. Dist. of Columbia*, 47 F. 4th 828, 846 (D.C. Cir. 2022) (applying the same standard for negligent training).

Actual knowledge exists when supervisors are contemporaneously aware of misconduct and either fail to stop it or affirmatively authorize it. *See Dist. of Columbia v. Tulin*, 994 A.2d 788, 796–97 (D.C. 2010) (concluding a jury could find negligent supervision when supervising officers improperly authorized the plaintiff's arrest without determining whether it was justified); *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001) (implying that negligent supervision occurs when a supervisor sees employee misconduct but fails to intercede).

In contrast, constructive knowledge arises from a recurring pattern of similar misconduct, though there is no brightline rule on the number of incidents or temporal proximity required. *Cf. McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C. 2016) (sufficient notice when the same police officers were named in "eleven previous complaints for similar unlawful conduct" over two years); *Singh v. Dist. of Columbia*, 881 F. Supp. 2d 76, 80, 87 (D.D.C. 2012) (sufficient notice when a plaintiff reported harassment by the same officers "on five separate occasions" in the same year).[2]

At the outset, Yarullina does not allege that the officers' supervisors were present at the scene or directly authorized their use of force against Casey. And the Government says Yarullina has not put forth enough facts to infer that prior misconduct by the officers placed the Secret Service "on notice of any dangerous or incompetent behavior." Mot. to Dismiss at 15. Yarullina maintains her Amended Complaint is sufficient because it "describes numerous incidents" in which *different* Secret Service officers used "excessive and lethal" force. Opp'n at 17. Taken together, she argues, these incidents should have put the Secret Service on notice of a general "pattern and practice of using excessive force against citizens and violating their constitutional rights." *Id.*

But Yarullina reads too much into her facts. The Amended Complaint lists four unconnected incidents spread across nearly two decades. *See* Am. Compl. at 8–9. One of the

---

[2] *McComb* and *Singh* involved § 1983 municipal liability claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) rather than D.C. law. But *Monell* claims premised on insufficient training and supervision have an analogous knowledge requirement. *See McComb*, 202 F. Supp. 3d at 18 (requiring "actual or constructive knowledge" that officers would engage in misconduct); *see also Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 270–71 (D.D.C. 2017) (dismissing a negligent training and supervision claim under D.C. law "for the same reasons as the *Monell* claim" because both lacked "facts demonstrating a pattern or practice of excessive force . . . [and] actual or constructive notice of inadequate training or supervision").

11

incidents Yarullina references happened *after* Casey's death, so it cannot have put the Secret Service on notice beforehand. *See* Am. Compl. ¶ 55 n.2; *Spiller v. Dist. of Columbia*, 302 F. Supp. 3d 240, 255 (D.D.C. 2018) ("[F]ailures to supervise or train *after* the incident in question do not give rise to a reasonable inference that [the defendants] were on constructive notice of dangerous or incompetent behavior.").

Two other situations arose from dubious arrests, but Yarullina makes no mention of excessive force. Am. Compl. ¶¶ 56, 57; *see also id.* ¶ 57 n.4. Count VIII sounds in use of excessive force, not wrongful arrest. Am. Compl. ¶¶ 151–52 (alleging "a pattern and practice of using excessive force" and insufficient "training and supervising [of] employees in accordance with the use of force policies and procedures"). Prior wrongful arrests—without improper use of force—do not demonstrate deficiencies in use-of-force training and supervision. *See, e.g.*, *Kenley v. Dist. of Columbia*, 118 F. Supp. 3d 12, 21 (D.D.C. 2015) (finding no constructive knowledge when a plaintiff alleged only misconduct that was not "related in any way to the behavior challenged"). At best, the wrongful arrests might have put the Secret Service on notice that different employees in the past violated different agency policies. That is insufficient.

The remaining incident listed in the Amended Complaint involves lethal use of force by different Secret Service officers in 2013. Am. Compl. ¶ 54. Yet Yarullina does not contend the lethal use of force was improper under the circumstances, and the Amended Complaint offers no facts from which to draw that inference. *See id.* Standing alone, this "single [incident] that does not even establish that an improper [use of force] actually occurred hardly gives . . . notice of a shortfall in [the defendant's] training processes." *Lin*, 47 F.4th at 846.

Even if the Court were to ignore these deficiencies, Yarullina has also "failed to present any evidence connecting [these] prior allegations of unrelated misconduct to the incident

12

involving" Casey. *Xingru Lin v. Dist. of Columbia*, 2020 WL 3542253, at *18 (D.D.C. June 30, 2020), *aff'd in relevant part, Lin v. Dist. of Columbia*, 47 F.4th 828 (D.C. Cir. 2022). She does not claim that Casey was the repeated target of officer misconduct. *See, e.g.*, *Singh*, 881 F. Supp. 2d at 87. Nor does she identify a string of complaints alleging similar misconduct in recent years. *See, e.g.*, *McComb*, 202 F. Supp. 3d at 18. Simply put, the Amended Complaint does not allege sufficient facts to plausibly infer the Secret Service was on notice of any dangerous or incompetent behavior from the three officers. So Count VIII fails to state a claim.

### IV.

Yarullina's case is far from over. The Court leaves for another day the merits of her remaining claims. But as for Counts IV through VII, the FTCA does not permit Yarullina to name the individual officers as defendants. And Count VIII fails to state a claim, so it must be dismissed. For these reasons, it is

**ORDERED** that the Government's [16] Motion to Dismiss Amended Complaint in Part is **GRANTED**; and it is further

**ORDERED** that Counts VIII, IX, and X are dismissed, and United States Secret Service Officers Doe 1–3 are dismissed as defendants for Counts IV through VII; and it is further

**ORDERED** that Plaintiff's [14] Motion for Early Discovery is **DENIED**.

**SO ORDERED.**

Dated: March 14, 2025

TREVOR N. McFADDEN
United States District Judge